IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

CATHERINE D. LAVENTURE,

    **Plaintiff,**

**v.**                                                                                 **Case No.:**

**NEW B, INC.**
**d/b/a The Alley,**

    **Defendant.**

## COMPLAINT

COMES NOW, the Plaintiff, Catherine D. Laventure, and complains against Defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended. Ms. Laventure seeks money damages, plus attorney's fees and costs.

## INTRODUCTION

New B, Inc. hired Ms. Laventure as a bartender at The Alley restaurant and club located in Newport News, VA in October 2014. In early 2015 the kitchen manager named EC and the general manager at Defendant, CN, began sexually harassing Plaintiff, including brushing up against her and lewd propositions and calling her a whore and a bitch and other derogatory names. Despite her contemporaneous and constant objections to the daily comments and conduct, the sexually offensive environment continued. On August 7, 2016 after her most recent complaints to CN about sexual harassment, CN fired her.

## NATURE OF CLAIM, JURISDICTION AND VENUE

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. (Title VII).

2. Jurisdiction is vested in this Court by 28 U.S.C. § 1331.

3. Venue is properly laid in this district under 28 U.S.C. § 1391.

## PARTIES TO THIS ACTION

4. Catherine D. Laventure ("Ms. Laventure" or "Plaintiff") is a female African American citizen of the United States and a resident of Newport News, Virginia.

5. New B, Inc. ("New B" or "Defendant") is a Virginia corporation doing business in the City of Newport News, Virginia as "The Alley."

## FACTUAL ALLEGATIONS

6. New B hired Ms. Laventure as a bartender, and she began work for the Company at its restaurant and bar, The Alley, in October 2014.

7. Plaintiff worked three nights each week at The Alley, usually 7:00pm to 3:00am Wednesday, Friday and Saturday.

8. EC was a manager at The Alley in charge of the kitchen, security and related operations with the authority to hire and fire employees.

9. CN was a manager at The Alley responsible for the bar and related operations.

10. CN also had authority to hire and fire, and he eventually fired Plaintiff.

11. CN set the terms and conditions of Plaintiff's employment.

12. EC engaged in sexually harassing behavior toward Ms. Laventure and other female employees and customers commencing in early 2015.

13. EC made crude, sexually explicit remarks to Ms. Laventure such as asking her to wear revealing clothing and commenting on her body and her appearance.

14. EC at least once a week called Plaintiff a whore, and when she was

speaking to customers at the bar he accused her of offering to have sex with them for money.

15. EC at least once a week cursed at Plaintiff at work, including calling her a bitch and a stupid bitch.

16. EC at least once a week called Plaintiff a slut and a whore.

17. Plaintiff found EC's cursing to be physically threatening and intimidating.

18. Often EC was agitated and aggressive when he cursed Plaintiff, and he was thickly built and much larger than Plaintiff.

19. EC engaged in the demeaning behavior described herein towards Plaintiff and other female employees at The Alley because of their sex, female.

20. EC also harassed female customers and shared with Plaintiff and other female employees the crude sexual names that he assigned to female regulars of the bar.

21. EC typically drank on the clock at work, and he brought female customers to Plaintiff's bar station and insisted that Plaintiff serve those female customers free drinks.

22. Plaintiff did not think providing free drinks to female customers was in the best interests of the bar given the cost of the drinks and the fact that serving them diverted her from productive work.

23. Plaintiff also did not appreciate the fact that she was not tipped for serving free drinks to female customers as directed by EC.

24. In approximately May 2016 Plaintiff died her hair blonde.

25. When EC saw her hair he began referring to her as "Becky," a name associated in urban culture and music with a white woman who performs oral sex on a

black man.

26. EC also referred to Plaintiff as a "back page girl" which is a reference to a local prostitution ring which places pictures and phone numbers of scantily clad women on the internet soliciting sexual relations for pay (i.e. prostitution).

27. Throughout June, July and the first week in August 2016 EC called Plaintiff a "whore" and a "back page girl" at least once a week when both were working at The Alley.

28. Also, at least once a week, EC tried to take pictures of and/or videotape Plaintiff at work.

29. Plaintiff protested, but nevertheless EC was able to capture photographs and videotapes of her, and he labeled those pictures and videos "back page girl" in his telephone.

30. Plaintiff is not and has never been a whore.

31. The claim that Plaintiff was a whore was made by one of the top two or three managers at The Alley, and it was made repeatedly at The Alley in the course of and within the scope of EC's management position there.

32. The allegation that Plaintiff is a whore imputed to Plaintiff the commission of a criminal offense of prostitution involving moral turpitude for which she, if the charge were true, might be indicted and punished.

33. As such, the words spoken by EC within the scope and course of his employment, constitute defamation *per se*.

34. Plaintiff made the scandalous comments in the presence of others at The Alley and, in any event, his comments constitute insulting words in violation of Virginia

4

Code §8.01-45.

35. EC called Plaintiff a whore and a "back page girl" repeatedly, recklessly, intentionally and with actionable malice.

36. Defendant is vicariously liable for the words uttered by its agent EC while engaged in the ordinary course of his employment and in connection therewith.

37. The statements made by EC are provably false and factual.

38. The statements made by EC necessarily prejudiced Plaintiff.

39. EC used intemperate and disproportional language demonstrating his actual malice because he could not believe that Plaintiff would not let him see her with less clothes on than her work attire.

40. EC knew that his comments would be heard by others because he said them to Plaintiff in front of other employees and customers at The Alley, including CN.

41. CN heard EC call Plaintiff a whore and a "back page girl" and Plaintiff complained about it to CN, but CN did nothing about it. The comments continued unabated.

42. EC proceeded with reckless disregard for whether his statements were true or false.

43. EC spoke with substantial awareness of the probable falsity of his statements.

44. EC acted intentionally to falsely accuse Plaintiff for the specific purpose of causing her humiliation, ridicule, severe emotional distress, anger and outrage.

45. Plaintiff sustained special damages, including emotional upset and embarrassment, the loss of reputation and standing in the community, plus humiliation as

5

a result of his calling her a whore and a "back page girl."

46. EC twice asked Plaintiff and other women who worked at The Alley to attend a pool party at his home.

47. EC told Plaintiff to wear as little as possible or nothing at all at each work-related pool party.

48. Plaintiff said she did not want to dress that way and engage in the other things that he indicated would take place at the work-related pool party involving illegal drugs, abuse of alcohol and partial, if not total, nudity.

49. EC reprimanded Plaintiff when she did not appear at the first work-related pool party.

50. Subsequently, EC invited Plaintiff to a second work-related pool party involving the same people and the same skimpy (if any) clothes and other inappropriate activities.

51. Plaintiff did not attend for the same reasons.

52. CN also commented on Plaintiff's physical appearance, and in particular her body.

53. CN encouraged Plaintiff to wear more revealing clothes at the bar.

54. CN told Plaintiff he wanted to see her wearing nothing but a watch.

55. Approximately once a week CN brushed the front of his body up against the back of Plaintiff's body in a sexual manner at work.

56. There was plenty of room for CN to avoid Plaintiff, but instead he lingered through the inappropriate physical contact of his groin area to Plaintiff's backside.

57. Plaintiff was required to wear a black uniform of jeans and either a t-shirt

or tank top.

58. When Plaintiff asked whether she could wear colors, CN suggested Plaintiff wear her American flag thong underwear and pasties over her nipples.

59. CN often asked Plaintiff to come to his home after she left work at 3:00am and make him breakfast the following morning.

60. Plaintiff considered this a not to subtle proposition that she spend the night with CN (including sex).

61. CN repeatedly told Plaintiff that he wanted to be romantically involved with her.

62. CN also told Plaintiff that the owner, Mr. D. thought CN should pursue Plaintiff romantically.

63. This is one reason why Plaintiff did not complain to the owner, in addition to the fact the owner was seldom at the bar, and when he visited it was just for a few moments.

64. Under the circumstances Plaintiff did not see how she would ever be able to speak with the owner alone, and Plaintiff reasonably assumed that the owner would encourage her to be romantically involved with CN even though she had no romantic interest in CN.

65. Each time Plaintiff told CN she was not interested in him, CN accused her of giving away drinks at the bar and threatened to fire her.

66. Ironically, the only drinks she gave away were at the insistence of EC.

67. CN's threats were very intimidating to Plaintiff because she needed her job.

68. CN also asked Plaintiff to attend the same two work-related pool parties at EC's home.

69. When Plaintiff returned to work, CN reprimanded Plaintiff when she did not appear at the first work-related pool party.

70. Also in response to her absence, CN also told Plaintiff she could only serve from one isolated bar (where it was easier for him to brush up against her constantly as described above).

71. CN did restrict Plaintiff's work as he threatened, and this in turn decreased Plaintiff's income from the Alley.

72. Subsequently, CN and EC invited Plaintiff to the second work-related pool party on August 7, 2016 at EC's house.

73. When Plaintiff did not attend the second pool party, CN fired her on August 8, 2016.

74. Plaintiff repeatedly told EC and CN to stop harassing her.

75. Plaintiff told CN that EC was harassing her sexually, including the specifics, but CN took no steps to stop EC though he was in a position to do so.

76. In addition to the horrendous conduct by EC and CN, a bartender named J (LNU) called many of the waitresses and bartenders, including Plaintiff, a bitch and a whore on a regular (weekly) basis (at least).

77. He also told women repeatedly to "shut the f**k up" in front of EC and CN.

78. Although EC and CN heard his tirades, and the female victims, including Plaintiff, objected to EC and CN about his tirades, neither EC or CN did anything in

response.

79. As a result, the harassment by J (LNU) continued unabated, provided Plaintiff never heard J (LNU) speak that way to any men at The Alley.

80. Ms. Laventure filed a charge of sexual harassment and retaliation for complaining of sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, with the Equal Employment Opportunity Commission (EEOC) on September 28, 2016.

81. The EEOC issued Plaintiff a Right to Sue dated May 2, 2017.

82. This Complaint is filed within 90 days of the dated of the Right to Sue letter.

83. As a result of the sexual harassment and retaliation, Plaintiff suffered lost wages and gradually experienced various physical and emotional symptoms including without limitation the following: loss of enjoyment of life, mental anguish, inconvenience, fear of EC and fear of the future if she lost her job and after she lost her job, emotional pain and suffering, anger, anxiety, depression, diminished self-worth, nightmares, headaches, nausea and sleepless nights.

## COUNT I – SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

84. Plaintiff repeats the foregoing allegations as if set forth herein at length.

85. Two managers at The Alley as described above engaged in demeaning behavior toward and harassment of Ms. Laventure because of her sex, female.

86. As a result of the cumulative effect of the harassment, Ms. Laventure's workplace was permeated with discriminatory intimidation, ridicule and insult, and she found it difficult to perform her job and function outside of work.

87. The foregoing conduct was at least weekly for over 18 months. It was severe and pervasive and altered conditions of employment for Ms. Laventure and created a hostile, offensive, and intimidating working environment at The Alley.

88. Ms. Laventure found the discriminatory conduct to be humiliating, intimidating and threatening.

89. The foregoing demeaning and harassing behavior toward Ms. Laventure continued after she complained to both managers to stop their offensive behavior.

90. Plaintiff complained to CN about EC's behavior to no avail.

91. Plaintiff had no one else to complain to because there was no human resources representative, the two top managers at The Alley were harassing her, and the owner was absent and unavailable.

92. Defendant acted with malice and reckless indifference to Ms. Laventure's statutorily protected right to employment free of sexual harassment.

93. The foregoing hostile environment interfered with Ms. Laventure's compensation, terms, conditions or privileges of employment in violation of Title VII.

94. The foregoing conduct by CN and EC created a culture of harassment where inappropriate comments were commonplace and there was an expectation that female employees would ignore the comments and look the other way.

95. Sadly, sexual harassment became an accepted practice over time at The Alley.

**COUNT II – RETALIATION IN VIOLATION OF TITLE VII**

96. Plaintiff repeats the foregoing allegations as if set forth herein at length.

97. Ms. Laventure had a reasonable belief that she suffered sexual harassment

by two managers, EC and CN, at The Alley during the relevant period of her employment.

98. Ms. Laventure engaged in a protected activity under Title VII when she complained about sexual harassment at The Alley.

99. Plaintiff suffered an adverse employment action when CN changed the scope of her work thereby decreasing her income after the first pool party, and subsequently when CN fired her within 24 hours of her last complaint about sexual harassment concerning the second pool party.

100. Defendant acted with malice and reckless indifference to Ms. Laventure's statutorily protected right to engage in the protected activity of complaining about sexual harassment.

101. Defendant retaliated against Ms. Laventure in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended.

## COUNT III – DEFAMATION PER SE

102. Plaintiff repeats the foregoing allegations as if set forth herein at length.

103. EC's statements that Plaintiff was a whore and a "back page girl" were false, and EC knew they were false when he made them.

104. The statements made by EC constitute defamation per se because they clearly harmed Plaintiff's reputation and deterred others in the community from dealing with her.

105. The accusations make Plaintiff appear odious and infamous and were intended by EC to subject Plaintiff to disgrace, ridicule and contempt.

106. EC's statements were intended to disparage Plaintiff's good name by

wrongfully attributing an indictable offense to her.

107. The words EC used imputed the commission of a crime (prostitution) punishable by imprisonment in a state penal institution.

108. The words spoken by EC also imputed to Plaintiff the commission of an act (prostitution) involving moral turpitude.

109. EC made the statements in front of numerous customers of and employees of The Alley on numerous occasions within the twelve months before the filing of this Complaint.

## COUNT IV – INSULTING WORDS

110. Plaintiff repeats the foregoing allegations as if set forth herein at length.

111. When EC called Plaintiff a whore and a "back page girl" he violated the insulting words statute Virginia Code §8.01-45.

112. The statements were false and EC knew they were false when he made them.

113. EC was standing or seated within five to ten feet of Plaintiff each time he insulted her.

114. EC's statements tended to violence and breach of the peace.

115. Every paragraph of this Complaint is hereby incorporated into every other paragraph.

## RELIEF REQUESTED

WHEREFORE, Plaintiff seeks the following relief for Count I:

    A. an award of lost wages including back pay and front pay;

    B. benefits and other compensation for monetary losses suffered;

  C. punitive damages;

  D. reinstatement to her former position or another position for which Plaintiff is suited at The Alley;

  E. reasonable attorney's fees and expert witness fees and costs of this action;

  F. pre-judgment and post-judgment interest; plus

  G. such additional legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff seeks the following relief for Count II:

  A. an award of lost wages including back pay and front pay;

  B. benefits and other compensation for monetary losses suffered;

  C. punitive damages;

  D. reinstatement to her former position or another position for which Plaintiff is suited at The Alley;

  E. reasonable attorney's fees and expert witness fees and costs of this action;

  F. pre-judgment and post-judgment interest; plus

  G. such additional legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff seeks the following relief for Count III:

  A. compensatory damages;

  B. punitive damages;

  C. pre-judgment and post-judgment interest; plus

    D.    such additional legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff seeks the following relief for Count IV:

    A.    compensatory damages;

    B.    punitive damages;

    C.    pre-judgment and post-judgment interest; plus

    D.    such additional legal and equitable relief as the Court deems appropriate.

**THE PLAINTIFF RESPECTFULLY HEREBY DEMANDS A TRIAL BY JURY.**

Plaintiff,

**CATHERINE D. LAVENTURE**

By: ___/s/ Christopher Colt North__
      Attorney for Plaintiff

Christopher Colt North
VSB #16955
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax:  (757) 873-8375
Email: cnorthlaw@aol.com
*Attorney for Plaintiff*